José Ramírez Muñoz, demandante y apelado, *v.* Jacinto Muñoz; la mercantil J. Muñoz & Co., compuesta por sus socios gestores Jacinto Muñoz, Pedro Solá Colón y por el socio industrial Francisco Ortiz; y Joaquín Moreno y Luis Méndez, demandados y apelantes.

No. 4069.—*Visto:* Enero 27, 1927. *Resuelto:* Abril 18, 1928.

*A. L. López*, abogado del apelante Moreno; *González Fagundo* y *González Jr.*, abogados de los apelantes J. Muñoz y J. Muñoz & Co.; *Rafael Arce Rollet*, abogado del apelado.

EL JUEZ ASOCIADO SEÑOR ALDREY, emitió la opinión del tribunal.

José Ramírez Muñoz, dueño de una casa de mampostería y azotea radicada en Caguas en las calles de Gautier Benítez, y de Vizcarrondo, marcada con el No. 19, la dió en arrendamiento en 1919 a Jacinto Muñoz por precio de $70 mensuales y término de dos años que vencían el 31 de octubre de 1921, comprometiéndose el arrendatario a conservarla en buen estado. Antes del primero de junio de 1921 Jacinto Muñoz había subarrendado una parte de esa casa a la sociedad Mercantil J. Muñoz y Compañía, compuesta por Jacinto Muñoz, Pedro Solá Colón y Francisco Ortiz, para un establecimiento de pulpería; otra parte a Joaquín Moreno para almacén de tabaco y el resto de ella a Luis Méndez. Unos meses antes de vencer el término del arrendamiento, en la noche del sábado 4 de junio de 1921, de doce a doce y media de la misma, se desarrolló un incendio en esa casa que causó daños en ella quemando alguna de sus puertas, parte del maderamen de la azotea y tabiques interiores de madera, deteriorando también el enlucido de sus paredes y otros daños más. Como consecuencia de ese incendio y del seguro contra incendio de las provisiones de J. Muñoz y Compañía

por $6,000 y de igual seguro de Joaquín Moreno por $3,000 fueron vendidas las existencias que no fueron destruidas por el fuego y los demandados dejaron de ocupar la casa. Nada diremos del otro subarrendatario por lo que luego se expresará. Así quedaron las cosas y algún tiempo después el dueño José Ramírez Muñoz demandó a su arrendatario y a los subarrendatarios y dictada sentencia declarando sin lugar la demanda fué revocada por nosotros y devuelto el caso a la corte inferior para ulteriores procedimientos. *Ramírez v. Muñoz*, 33 D.P.R. 362.

Después de nuestra decisión el demandante presentó demanda enmendada contra Jacinto Muñoz, contra la mercantil J. Muñoz y Compañía, compuesta por los tres socios antes mencionados, contra Joaquín Moreno y contra Luis Méndez alegando dos causas de acción, una para que Jacinto Muñoz le pague los arrendamientos de dicha casa desde el primero de junio de 1921 en adelante, fundada en que no le ha entregado la casa y continúa en su posesión: siendo la segunda contra Jacinto Muñoz y contra los otros demandados para que le devuelvan la casa en el buen estado en que él la entregó o para que en defecto de esto le paguen $3,500 que importan sus reparaciones, en la proporción que para cada uno de los demandados determine la corte, pagándole además Jacinto Muñoz el canon de arrendamiento durante todo el tiempo que duren esas obras.

El demandado Luis Méndez había muerto cuando fué presentada esa demanda enmendada y el demandante desistió de ella en cuanto a él. Los otros demandados se opusieron a la demanda y celebrado el juicio fué dictada sentencia condenando a Jacinto Muñoz por la primera causa de acción a pagar el canon de arrendamiento de $70 mensuales desde el primero de junio de 1921 hasta que se entregue la casa al demandante o hasta que se pague el importe de sus reparaciones, y condenando a Jacinto Muñoz, a J. Muñoz y Compañía y a Joaquín Moreno a devolver la casa en las mismas

condiciones en que fué entregada a Jacinto Muñoz en 1919 y en su defecto a que la mercantil J. Muñoz y Compañía pague al demandante la cantidad de $1,000 y Joaquín Moreno $500 que importan el poner la casa en condiciones de uso, debiendo además pagar Jacinto Muñoz el canon dicho de arrendamiento por el tiempo que dure la ejecución de esas reparaciones, no excediendo de dos meses: declaró sin lugar la demanda en cuanto a Luis Méndez e impuso las costas a J. Muñoz y Compañía y a Joaquín Moreno.

Contra esa sentencia interpuso apelación Joaquín Moreno bajo la dirección de un abogado y también Jacinto Muñoz y J. Muñoz y Compañía por otro letrado, presentando cada parte apelante sus respectivos motivos de error contra la sentencia, siendo común en ambos recurrentes el motivo de que la evidencia no justifica la sentencia condenatoria en cuanto a pagar las reparaciones de la casa; motivo que consideraremos en seguida porque si es cierto resolverá el caso definitivamente y hará innecesario el considerar los otros motivos de error aducidos.

■ ■ La prueba del demandante consistió en seis testigos, dos de ellos para especificar los daños sufridos por la casa a consecuencia del incendio y para valorar el importe de sus reparaciones, siendo los otros cuatro el demandante José Ramírez Muñoz, Juan R. Lugo, cabo de la Policía Insular, Francisco Ortiz y Joaquín Moreno, los dos últimos demandados.

El testigo demandante se enteró del incendio de la casa al día siguiente de ocurrido, siendo esto lo substancial de su declaración con respecto al fuego. El cabo de la policía fué a la casa cuando oyó los toques de corneta de los bomberos, vió cuando éstos derribaron una puerta para meter la manguera y apagar el incendio: después de apagado entró en la casa para investigar: vió tabaco quemado y provisiones y le dió olor a gas (petróleo) e investigando supo que allí había una tienda que vendía petróleo, encontrando latas de gas

(petróleo) sin abrir y sin quemar, enteras: que el fuego era interno, originado en el edificio, y como nada había que pudiera demostrar que el fuego fué intencional supuso que sería ocasionado por la luz eléctrica o algo así: que en Caguas han ocurrido otros incendios por la luz eléctrica, especificando uno ocurrido por la noche y otro por la tarde: que la casa estaba cerrada: que cuando estaba en el incendio llegaron los inquilinos, Joaquín Moreno y Pedro Solá: que al día siguiente del fuego volvió a la casa por la mañana y notó que había cajas de gas sin quemar: que los tabiques se carbonizaron por arriba y también el plafón: que cuando entró en la casa ardían las provisiones y las tablas: que las llamas eran de arriba para abajo en todo aquello: que para esa época hubo varios incendios en Caguas, antes y después, por lo que puso un policía en la calle Gautier Benítez para vigilancia, y había además un sereno pagado por el comercio, que desempeñaba las mismas funciones que el policía. El testigo Francisco Ortiz, socio industrial de la tienda, estaba enfermo la noche del fuego y dijo que en la tienda no se quedaba nadie por las noches: no sabe cómo ocurrió el incendio: que el negocio era de venta de provisiones: y que tenían un sereno del comercio, que pagaban. Joaquín Moreno tenía tabaco en esa casa, parte que había comprado ese año y que tenía asegurado por $3,000 y otra parte no asegurada producido en sus fincas, que unos días antes del incendio almacenó allí: algún tabaco no se quemó y fué vendido, pagándole la compañía de seguro $2,700: él vivía en otra casa: fué al sitio del suceso cuando llegaban allí otras personas: no sabe cómo ocurrió el incendio, aunque investigó su causa, pudiendo ser la luz eléctrica porque por ella han ocurrido otros incendios en Caguas: que él iba a ese almacén un rato todos los días y lo tenía entregado a Marcelino Rivera: que de noche custodiaba un sereno que pagaban entre todos los del comercio: que en el departamento

que él tenía en esa casa había instalación eléctrica y que nunca se trabajaba allí de noche.

Esa fué toda la prueba del demandante y una inspección ocular de la casa sin que su resultado conste en los autos.

La prueba de los demandados consistió en las declaraciones de varios testigos. Uno de ellos, Pedro Solá, socio de J. Muñoz y Ca., dijo que la pulpería trabajaba hasta las seis de la tarde los días laborables y que los sábados la cerraban a las diez de la noche y se iban a sus casas después de registrarla bien, dejándola cerrada con llave: que tenían un sereno del comercio que pagaban y cuya misión era vigilar las tiendas de la calle de los que les pagaban: que esa noche quedó cerrada la tienda después de registrada y estando durmiendo en su casa fué avisado del incendio, saliendo en seguida y dirigiéndose al parque de bomberos, ayudando a transportar la bomba al sitio del suceso: que entonces tenían una existencia de siete mil y pico de pesos sin contar una caja registradora que les costó un mil pesos, una caja de sumar cuyo valor es de $275, una caja de hierro de unos setenta pesos, un escritorio que valía $150, y los aparadores que valían de 600 a 700 pesos, cuyos objetos no estaban asegurados: que al ocurrir el incendio estaba cerrada toda la casa: que atribuye el incendio a la luz eléctrica porque por ella han ocurrido otros incendios en Caguas, habiendo él visto quemarse un poste de la luz eléctrica y caerse al suelo quemado: que en su tienda vendían gas (petróleo) y tenían veinticinco cajas que la compañía de seguros realizó, algunas rotas porque los bomberos entraron allí y destrozaron muchas provisiones: que el gas no se incendió porque no hubo fuego en la parte en que estaba: que se derramó por allí, y que había cajas rotas y latas que se abrían con la precipitación y se regó por el piso: que la compañía de seguros liquidó siete mil y pico de pesos: citó incendios ocurridos en Caguas por la luz eléctrica: que antes del incendio tenían también allí un puesto para vender gasolina con su tanque a prueba

de fuego y cuando lo vió el dueño de la casa le dijo que si no pagaban un seguro de la casa quitara esa venta por lo que suprimieron ese negocio: que después del incendio quedó desocupada toda la casa inmediatamente, desde el 4 de junio de 1921 y le llevó un cheque a don José Ramírez por el arrendamiento, menos cuatro días de junio: que después no ha sido requerido para pagar el arrendamiento: que era quien pagaba el arrendamiento de toda la casa, lo que sabía Ramírez quien mandaba un hijo suyo a cobrarle: que en la tienda había luz eléctrica, que esa noche, como en todas, dejaron apagada: que la compañía de seguros les pagó casi $6,000 que les sirvieron para pagar y además tuvo que vender una casa suya que le costó $3,000 y su socio tuvo que dar $2,000 más porque las mercancías valían más que sus pólizas: que cuando el alza del azúcar en 1920 ganó mucho dinero y cuando la baja no perdió nada porque suspendió las compras cuando estaba a ocho o diez pesos; y que cuando el incendio vendían por valor de siete u ocho mil pesos mensuales. Marcelino Rivera dijo que era quien atendía un negocio que tenía con Joaquín Moreno para comprar tabaco: que a las seis de la tarde cerraba el almacén, en el que nadie vivía: tenía instalación eléctrica: que antes de acostarse solía pasar por el almacén y mover las puertas para saber si estaban bien cerradas: que en la noche del fuego había en el almacén el tabaco que compraba y otra cantidad que llegó dos o tres días antes de la finca de Moreno.

Se presentó también como última prueba la investigación que por ese incendio practicó el fiscal, la que nada nuevo aporta a lo ya expuesto.

La prueba en este juicio no fué contradictoria pues la del demandante es para probar el hecho del incendio y los daños ocasionados, y la de los demandados no niega esos hechos y su único alcance es probar que el deterioro sufrido por la casa arrendada ha sido ocasionada sin culpa de ellos.

Según el artículo 1466 del Código Civil el arrendatario

es responsable del deterioro o pérdida que tuviera la cosa arrendada, a no ser que pruebe haberse ocasionado sin culpa suya: y en nuestra anterior sentencia en este caso declaramos que el artículo 1454 impone también esa responsabilidad a los subarrendatarios.

El conjunto y resumen de la prueba de los demandados es que ellos observaban la conducta de hombres prudentes en el uso de la casa en la parte que cada uno tenía subarrendada pues cerraban por las noches las puertas de la casa después de hacer registro en ella, contribuían a pagar un sereno del comercio para que vigilase de noche sus establecimientos, vigilancia que también hacía un policía insular, probaron que la casa tenía instalaciones eléctricas en los departamentos ocupados por ellos; que en Caguas habían ocurrido algunos incendios en otras casas producidos por las instalaciones eléctricas; que J. Muñoz y Ca. había quitado un depósito que había tenido para venta de gasolina porque así se lo ordenó el dueño de la casa si no aseguraba ésta contra incendio, y que si bien tenía en su pulpería algunas cajas con latas de petróleo la venta de este artículo formaba parte de su negocio de pulpería. En vista de esta prueba no contradicha opinamos que los demandados probaron que el incendio productor del deterioro de la casa ocurrió sin culpa suya, por lo que no están obligados los demandados al pago de las reparaciones de la casa.

En vista de la anterior conclusión nos resta examinar si el arrendatario Jacinto Muñoz está obligado a pagar el precio del arrendamiento de dicha casa desde el primero de junio de 1921.

Después del incendio la casa quedó inservible para los fines a que se la destinaba. Desde entonces el arrendatario y los subarrendatarios no han tenido su disfrute ni su posesión y lo que ha ocurrido es que el dueño de ella tampoco ha querido tomar posesión material de la misma por entender que debía serle devuelta en las mismas condiciones

en que la entregó, deber que hemos dicho no tiene el arrendatario y subarrendatarios por haber ocurrido el fuego sin culpa de ellos; y como según el artículo 1457, No. 2º., del Código antes citado el arrendador está obligado a hacer en la cosa durante el arrendamiento todas las reparaciones necesarias a fin de conservarla en estado de servir para el uso a que ha sido destinada, no habiendo hecho dichas reparaciones no tiene derecho a cobrar arrendamiento desde que la casa quedó inservible para el fin que se la destinaba.

Por lo expuesto la sentencia apelada *debe ser revocada y declarada sin lugar la demanda,* sin especial condena de costas.

El Juez Asociado Señor Hutchison está conforme con el resultado. El Juez Asociado señor Texidor no intervino.